IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NICO ROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 24 C 08222 |
| | ) | |
| NATIONAL GENERAL INSURANCE et al., | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

**ORDER**

For the reasons stated below, the defendants' pending motions to dismiss [30] [34] [40] are granted. All claims against the defendant insurers, including United Financial Casualty Co., Progressive Insurance Co., and National General Insurance Co., are dismissed with prejudice. The following claims against Lyft are also dismissed with prejudice: breach of contract, breach of the duty of good faith and fair dealing, violation of Illinois insurance code, negligent infliction of emotional distress, unfair enrichment, and failure to investigate, settle, defend, indemnify, reimburse, communicate, and exercise a duty of care. The plaintiff's claims against Lyft for misrepresentation and unfair and deceptive practices, however, are dismissed without prejudice. Plaintiff is granted leave to include those claims, in addition to his claim under the Illinois Transportation Network Provider Act, in a second amended complaint by 8/28/25. Failure to amend by that deadline will result in dismissal of the case.

**STATEMENT**

1. **Background**

Plaintiff Nico Ross brings this case against Lyft, Inc. and several insurance companies for torts arising from a car accident. He alleges the following:

On October 9, 2019, Ross was rear-ended "through no fault of his own" by another motorist, Onyx Hernandez. 1st Am. Compl. ("Compl.") 9, 23. At the time, Ross was working as a Lyft driver in Chicago, Illinois. *Id.* The collision left Ross uninjured but his vehicle significantly damaged.

In an unfortunate turn of events, Hernandez's personal liability insurance expired at midnight the night before the incident. Pl.'s Resp. in Opp. to Def. Nat. Gen. Ins.' Mot. to Dismiss ("NGI Resp.") 10, ECF No. 60. Ross filed a claim with Lyft's insurance company, United Financial Casualty Co. ("Progressive"), but was denied. *See id.* at 11-12. He then sued Lyft,

Progressive, Hernandez, and two other insurance companies, National General Insurance Co. and Allstate Insurance Co. (collectively, "Allstate"), in Cook County Circuit Court.[1]

Ross asserted a dizzying array of claims against all defendants: breach of contract, misrepresentation, unjust enrichment, unfair and deceptive practices, negligent infliction of emotional distress, bad faith, violation of Illinois insurance code, violation of Illinois's Transportation Network Provider Act ("TNP Act"), and failure to investigate, communicate, settle, defend, indemnify, and exercise due care. In response, Lyft removed the case to this Court, and Lyft, Progressive, and National General Insurance filed the three motions to dismiss now under review.

## 2. Discussion

Dismissal under Rule 12(b)(6) is appropriate when, after "accepting as true all well-pleaded factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor[,] . . . 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Moranski v. General Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). To survive a motion to dismiss, a plaintiff must comply with Rule 8(a) by "stat[ing] a claim to relief that is plausible on its face" and which provides the defendant(s) with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, (2007).

### a. Group Pleading

The operative complaint fails to "give fair notice to each defendant of the claims that each defendant must defend against." *Watkins v. S. Suburban Major Crimes Task Force*, No. 24-cv-3555, 2025 WL 1148472, at *3 (N.D. Ill. Apr. 18, 2025). Rather than attribute misconduct to those who allegedly committed it, the complaint lodges nearly every allegation against "the defendants" as a unitary whole. *See*, *e.g.*, Compl. 10 ("Defendants failed to provide the plaintiff with any insurance coverage."); *id.* at 14 ("[D]efendants did not clearly communicate insurance policies."); *id.* at 16 ("[D]efendants conducted inadequate [i]nvestigation"); *id.* at 20 ("[D]efendants left plaintiff stranded."). In doing so, the plaintiff makes it impossible for any given defendant to distinguish between misconduct attributed only to them, collective misconduct to which they were a contributing conspirator, and misconduct committed independently by several co-defendants (perhaps including them). *Cf. Robles v. City of Chicago*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019)

---

[1] The plaintiff did not originally name Allstate but sought to join it in a later motion that was pending at the time this case was removed. *See* Order Denying Remand, ECF No. 43. The complaint also named Trexis Insurance Co. and Direct Auto Insurance Co., which have not appeared and for which the status of service is unclear. Hernandez also has not appeared, and had not been properly served at the time of removal. *Id.* at 1-2.

(finding, in contrast with this case, that a complaint provided adequate notice because it "d[id] not employ ambiguous formulations of collective action by multiple defendants that fail to 'adequately connect specific defendants to illegal acts.'" (quoting *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009))).

To be clear, allegations directed generally toward "defendants" do not inherently warrant dismissal, and courts have routinely accepted such methods of group pleading based on good cause. No such extenuating circumstances exist in this case, however. Because Ross's allegations concern his first-person experiences, he is perfectly capable of "specify[ing] which individual committed which parts of the alleged misconduct before the benefit of discovery." *Kuri v. City of Chicago*, No. 13-cv-01653, 2014 WL 114283, at *7 (N.D. Ill. Jan. 10, 2014) (citing *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009)). Moreover, this is not a case involving "only a few defendants where the alleged facts plausibly suggest a basis for holding each . . . personally liable." *Karney v. City of Naperville*, No. 15-cv-04608, 2016 WL 6082354, at *7 (N.D. Ill. Oct. 18, 2016). Far from "clear[ly] . . . pertain[ing] to all of the defendants," *Robles*, 354 F. Supp. 3d at 875, many of Ross's claims cannot plausibly apply across the board. *See, e.g.*, Compl. 11 ("Defendants had a duty to reimburse."); *id.* at 13 ("Defendants benefited monetarily from plaintiff's driving services."); *id.* at 24 ("Mr. Ross filed claim with the defendants."). For instance, the plaintiff asserts that "the defendants"—presumably including Hernandez and his insurers—"individually and or collectively had issued or agreed to provide [a] policy of insurance to Lyft." Compl. 23. That simply cannot be the case.

Because "the allegations of the complaint leave the defendants in the dark about what they are alleged to have done," *Robles*, 354 F. Supp. 3d at 875, the complaint fails to satisfy the minimum pleading requirements of Rule 8. Dismissal without prejudice is warranted on that basis alone.

    b. **Progressive and Allstate**

Regardless, the plaintiff's complaint also suffers from a more fundamental issue: Illinois's general prohibition on direct, third-party lawsuits against insurers.

In Illinois, the proper remedy for injuries from an insured tortfeasor (short of settlement) is to sue the tortfeasor, obtain a judgment, and seek indemnification from the defendant's liability insurer, including, if necessary, through a separate lawsuit for failure to settle brought under an assignment of rights from the policyholder. *See, e.g.*, *Morris v. Nuzzo*, 718 F.3d 660, 663 (7th Cir. 2013). Ross did not follow that course. Instead, he opted to sue Hernandez's and Lyft's insurance companies[2] directly, alleging that those companies committed independent torts by declining to

---

    [2] Ross is inconsistent regarding the identity of Hernandez's insurer (or, more precisely, Hernandez's former insurer, given that his coverage allegedly expired shortly before the incident). In his complaint, Ross claims that Hernandez had been insured by Direct Auto Insurance. *See*

cover his car damage. That is not permitted. Illinois public policy generally "prohibits an injured party from recovering personal injury damages against an insurance carrier on account of the negligence of its insured prior to obtaining a judgment against the insured." *Richardson v. Economy Fire & Casualty Co.*, 485 N.E.2d 327, 329 (Ill. 1985); *see also Zegar v. Sears Roebuck & Co.*, 570 N.E.2d 1176, 1177 (Ill. App. Ct. 1991) ("In Illinois, direct actions against insurance companies are against public policy."). Because Ross "is neither an assignee nor an insured of the policy at issue, his relationship to [the insurers] is that of a third-party claimant"—"[a]t best, . . . a potential judgment creditor of the insured." *Carlsson v. Am. Fam. Ins. Co.*, No. 1-10-2916, 2011 WL 10071957, at *4 (Ill. App. Ct. Nov. 8, 2011). Given that limited role, Progressive and Allstate "owed no duty to [Ross] in the handling of his claim against [Hernandez], and [Ross] may not sue in his own right in a direct cause of action against [the insurers]." *Id.*

Resisting that conclusion, Ross claims that he "acquired [a] third party beneficiary interest" in Lyft's insurance policy that supported a right to sue. Compl. 23. Not so. For a third-party beneficiary to sue an insurer, "the language of the contract must establish that the contract was made for the direct, not merely incidental, benefit of the third party," such as through an "express provision . . . identifying [the plaintiff] by name or defining [him] as [an] insured[]." *State Farm Life Ins. Co. v. Arnold*, No. 22-cv-02834, 2024 WL 3819414, at *3 (S.D. Ill. Aug. 14, 2024); *see also 155 Harbor Drive Condominium Ass'n v. Harbor Point Inc.*, 568 N.E.2d 365, 374 (Ill. App. Ct. 1991) ("Only third parties who are direct beneficiaries have rights under a contract. It is not enough that the third party will only reap incidental benefits from the contract." (citations omitted)). Ross identifies no such provision, dooming his claim to third-party-beneficiary status. *See Holmes v. Federal Insurance Co.*, 820 N.E.2d 526, 528 (Ill. App. Ct. 2004) ("[A]bsent an express or clearly implied right in the insurance contract to sue the insurer directly to recover medical expenses, an injured party cannot maintain an action to recover those expenses directly from the insurer, at least until after a settlement, adjudication, or release of claim against the insured has been secured." (citing *Zegar*, 570 N.E.2d 1176)).

Ross alternatively claims that he was party to "an adherence, implied, expressed and written contract" with Progressive. Pl.'s Resp. in Opp. to Def. United Fin. Cas. Co.'s Mot. to Dismiss 5, ECF No. 58. His assertion of a written contract fails categorically, as the complaint contains no factual allegations supporting the notion that Ross and Progressive signed a formal agreement. *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) ("[W]hen considering the viability of a claim in the face of a Rule 12(b)(6) challenge, [courts] may reject sheer speculation, bald assertions, and unsupported conclusory statements.").

Ross's attempt to invoke an implied contract fairs no better. "A contract implied in fact must contain all elements of an express contract . . . an offer, acceptance, and consideration." *BMO*

---

Compl. 24. But in his response brief, Ross states that it was Allstate and its subsidiary National General Insurance Co. who had insured Hernandez. *See* NGI Resp. 5-6.

4

*Harris Bank, N.A. v. Porter*, 106 N.E.3d 411, 421 (Ill. App. Ct. 2018). Yet Ross fails to allege facts and circumstances from which any element of a contract with Progressive might be inferred. *See id.* ("[T]o sufficiently plead an implied-in-fact contract, defendants had to plead the essential elements of a contract, supplied by implication from the parties' conduct or actions."). Even if he had, any implied contract that might have otherwise existed would be superseded by Progressives detailed and exhaustive policy with Lyft concerning incidents involving drivers like Ross, since "under Illinois law, implied contracts will not co-exist with express contracts on the same subject." *Zadrozny v. City Colleges of Chicago*, 581 N.E.2d 44, 48 (Ill. App. Ct. 1991).

Because Ross has failed to allege the factual predicates of third-party-beneficiary status or a contractual relationship (implied or otherwise), his claims against Progressive and Allstate are barred by Illinois's prohibition on direct actions against liability insurers by third-party claimants. More precisely, Ross is barred from raising claims alleging a breach of any duty arising from an insurance arrangement. *Martin v. State Farm Mut. Auto. Ins. Co.*, 808 N.E.2d 47, 51 (Ill. App. Ct. 2004) ("[T]he duty in the handling of claims is owed only to the insurance company's insured" and "does not extend to benefit an adversary third-party claimant." (citations omitted)). That includes Ross's claims against Progressive and Allstate under theories of breach of contract, breach of the duty of good faith and fair dealing, misrepresentation, violation of Illinois's insurance code, and failure to investigate, settle, defend, indemnify, reimburse, communicate, and exercise a duty of care. *See Scroggins v. Allstate Ins. Co.*, 393 N.E.2d 718, 721 (1979) ("[T]he duty of good faith and fair dealing . . . is one which the insurer owes to its insured, not to third parties. . . . Thus, the rule in Illinois and nearly all jurisdictions is that in the absence of statutory or contractual language sanctioning a direct action, an injured third party has no action against the insurer for breach of the duty to exercise good faith or due care." (citations omitted)).

Ross's remaining claims against Progressive and Allstate fail for different reasons. To the extent Ross seeks to hold the insurers liable under the Transportation Network Providers Act, which sets forth minimum insurance requirements, he is unsuccessful because the Act applies to "transportation network companies and participating TNC drivers" and not insurers. 625 ILCS 57/10. Likewise, Ross fails to state a claim based on negligent infliction of emotional distress, which requires an allegation of "contemporaneous physical injury or impact" caused by the alleged negligence that he does not (and likely cannot) make against the insurers. *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 59 (Ill. 2016).[3] And finally, as explained below, Ross has pleaded himself out of court on his unjust-enrichment claim by incorporating into the pleadings a document that dispositively undermines his allegations.

---

[3] Illinois recognizes a limited exception to the physical-injury requirement for indirect victims who witness a traumatic physical injury to another person while standing within the zone of danger created by a tortfeasor's negligent conduct. *See, e.g.*, *Rickey v. Chicago Transit Auth.*, 457 N.E.2d 1, 5 (Ill. 1983). Ross makes no such claim.

All of Ross's legal theories derived from a contractual relationship with the insurer defendants fail based on Illinois' prohibition on direct action by third-party claimants. The remaining theories fail as a matter of law for unrelated reasons. As such, Progressive's and Allstate's motions to dismiss the complaint for failure to state a claim for relief against the insurer defendants are granted.

### c. Lyft

Since Lyft is not in the business of providing insurance (as opposed, possibly, to procuring insurance), all of Ross's claims premised on the existence of a coverage agreement—*e.g.*, breach of contract, breach of duty of good faith and fair dealing, etc.—fail. The claim for negligent infliction of emotional distress also fails for the same reason identified above—Ross has not alleged that he experienced or traumatically witnessed a physical injury. That leaves Ross's theories of unjust enrichment, unfair deceptive practices, and misrepresentation as possible bases for his claim against Lyft.

The unjust-enrichment theory also fails as a matter of law. The complaint alleges that Lyft unjustly retained over $400 in monthly "insurance premiums" that Ross paid "in exchange for insurance coverage" that was never provided. Compl. 13. Typically, the Court would simply accept such factual assertions as true at the pleadings stage. In this case, however, the claim that Ross paid insurance premiums directly contradicts a document incorporated into the complaint.[4] *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss."). That document, a 2019 earnings summary, describes the fees in question as "service fees *passengers* paid . . . to support some of Lyft's operational costs." Ex. 1 to NGI Resp., ECF No. 60, at *19 (emphasis added). Because the fees were paid by passengers and not drivers, Ross has no basis upon which to assert unjust enrichment against Lyft.

Lyft also contends that Ross has failed to allege minimum facts to support his claims of misrepresentation and unfair and deceptive practices. Def. Lyft's Mot. to Dismiss 6, ECF No. 40. The Court agrees. While detailed factual allegations are not required at the pleading stage, a viable complaint must contain more than mere "labels and conclusions" and "formulaic recitation[s] of a cause of action's elements." *Twombly*, 550 U.S. at 555. As written, the operative complaint does little more than summarily proclaim that the "defendants' practices were deemed as unfair or deceptive." Compl. 1; *see also id.* at 9 (alleging the same without elaboration); *id.* at 16 (same).

---

[4] Technically, the operative First Amended Complaint incorporated the exhibit by reference, *see* Compl. 13, the plaintiff neglected to attach it, and the plaintiff subsequently sought leave to incorporate the exhibit by amendment. *See* NGI Resp. 4 (moving to incorporate, *inter alia*, exhibit 1 into the pleadings). To the extent leave is required to incorporate a document referenced in the complaint but omitted by apparent mistake, it is granted.

Similarly, while the complaint provides some color as to Progressive's alleged misrepresentations, *see id.* at 18, the same cannot be said for Lyft, which is left to speculate regarding the subject, date, recipient, and general content of its supposed misstatements. Given that the wholesale absence of any supporting factual allegations to accompany Ross's conclusory assertions of misrepresentation and unfair and deceptive practices, dismissal of those theories may be warranted on summary judgment if not supplemented through discovery.

\* \* \*

The complaint's allegations fail to distinguish between defendants to the minimum degree necessary to put them on notice of their alleged wrongdoing. Moreover, Illinois law bars third-party claimants from suing for breach of duties that arise from the insured-insurer relationship. The plaintiff is a third-party claimant, given that he has no basis to assert status as a contractual beneficiary or a party to an implied agreement. Accordingly, Ross's contract-based claims against Progressive and Allstate fail as a matter of law. The same goes for Ross's additional claims against the insurers for unjust enrichment, negligent infliction of emotional distress, and violation of the TNP Act. Because no amount of re-pleading could overcome those claims' fatal legal defects, all claims against the defendant insurers, including United Financial Casualty Co., Progressive Insurance Co., National General Insurance Co., and Allstate Insurance Co., are dismissed with prejudice.

Turning to Lyft, Ross's claims based on the insured-insurer relationship are also dismissed with prejudice, considering that the company is not alleged to be in the business of providing insurance. That includes Ross's claims of breach of contract, breach of the duty of good faith and fair dealing, violation of Illinois's insurance code, and failure to investigate, settle, defend, indemnify, reimburse, communicate, and exercise a duty of care. Ross's claims of unjust enrichment and negligent infliction of emotional distress against Lyft are also dismissed with prejudice. The misrepresentation and unfair and deceptive practices, however, are dismissed without prejudice, as plaintiff might plausibly provide adequate specifics concerning those claims in an amended complaint. Plaintiff is given leave to include those claims, in addition to its TNP Act claim, in a second amended complaint.

Dated: August 7, 2025

John J. Tharp, Jr.
United States District Judge